It is a circumstance of some importance in my judgment, though for reasons before suggested not decisive, that accidental fire, occurring through human agency, has never been held to be a peril of the sea under any marine contract. I am aware that in Plaisted v. Boston & K. Steam Nav. Co., 27 Me. 135, it is said by the court to be settled, that fire is a peril of the sea within a policy of insurance. It is true, that the risk of fire is assumed by marine policies, because fire is one of the perils expressly enumerated in such policies. Mr. Phillips in his last edition, (volume 2, note 1099,) says it would have been included, if not expressly mentioned. Perhaps this is a fair deduction from the nature and objects of the contract of insurance; but so far as I know, it never has been included; and the fact that the risk of fire, eo nomine, is taken, in addition to perils of the seas, has some tendency to show that this phrase has not generally been understood to embrace fire, even in such contracts. And I think he would be a bold man who should now venture to strike out from the enumerated risks on a marine policy, the word fire, trusting to the courts to insert it by construction. I should apprehend some difficulty in making such a construction at this day. Taking a more practical view of this question, it does not seem to me that a contract by the charterer to be responsible to the owner for losses by accidental fire is in its nature unreasonable or unlikely to be made. The hirer, in this case had the entire possession, command, and navigation of the vessel. He appointed the master and hired the crew. They were his servants. The owner might well say to him, if a fire occurs through the negligence of your servants on the high seas, or in a distant port, I shall have no proper means of proving that negligence. I do not choose to leave any such question open. You must take the responsibility for loss by fire. It was upon grounds of public policy, similar to these, that the common law held carriers liable for accidental fire, and though that public policy did not embrace charterers of vessels, it shows that owners may find reasons of a similar character for protecting themselves by contract from similar dangers. Upon the whole, my opinion is, that the fire by which this vessel was destroyed, was not a peril of the sea within the exception in the covenant, and consequently the charterer was liable for the loss.

As to the damages, as the libellant did not appeal, he cannot claim greater damages in this court than were allowed in the district court. Stratton v. Jarvis, 8 Pet. [33 U. S.] 4; Canter v. American Ins. Co., 3 Pet. [28 U. S.] 318. The respondents have made some suggestions, by way of argument, to reduce the amount of damages decreed below; but I think the decree should not be disturbed in this particular. The respondents did not assign as error in that decree, that the damages, if any should be allowed, were excessive. But if they had done so, I do not thing any error has been shown. It is urged that the value of the vessel as she lay on the shoal should be taken, and this is correct. provided the stranding was not upon a well-known shoal, or was effected by causes beyond the control of the master. There is difficulty in coming to a conclusion, favorable to the respondents, on either of these points. I have not thought it necessary to go into a minute examination of the evidence concerning them, because I am of opinion that I cannot treat the value of the vessel as materially diminished by the stranding. It is not so pleaded in the answer, which admits her value to be $2,000, the sum fixed upon by the district court. Nor does the evidence satisfactorily show, that the position of the vessel on the shoal was such, as exposed her to much peril, or would have occasioned any considerable expense to get her off. There is not a little discrepancy between the evidence which comes from the vessel and the shoresmen who went on board. And, considering that the burden is on the respondents, to bring the case within the exception in their covenant, by showing that the vessel's value was reduced, before she was burnt, by a danger of the sea, I am not satisfied that they have sustained that burden. The libel claims the charter money for one month and a half, and the answer denies that any thing ever became due on this account. But it does not allege that the vessel was unseaworthy when she sailed on her voyage from Frankfort, and if she were not, I perceive no reason why this monthly hire was not properly allowed by the district court. The decree of the district court is affirmed with costs.

## Case No. 116.
### AITKEN v. The MAY POWELL.
District Court, S. D. New York. 1852.
[Nowhere reported; opinion not now accessible.]

## Case No. 117.
### The AJAX.
[1 Adm. Rec. 431.]
Superior Court, S. D. Florida. Dec. 7, 1836.

SALVAGE—AWARD—PARTIALLY DAMAGED CARGO.

[This was a libel for salvage by Richard Roberts and others against the cargo and materials saved from the ship Ajax, (Charles A. Hiem, claimant.) The vessel was lost on Carrysfort Reef, off the coast of Florida. Part of the cargo was saved dry and uninjured. and part in a wet and damaged condition. The decree allows the salvors "thirty-five per centum of the net amount arising from such portions of said cargo as were saved dry and uninjured, and fifty per centum upon the net amount of

sales arising from that portion of said cargo which was taken from said ship in a wet, damaged, and perishing condition, and also fifty per centum upon the net amount of sales of the materials saved from said ship; to be paid to said salvors according to their respective interests therein."]

[Cited in Baker v. The Slobodna, 35 Fed. Rep. 542; The John and Albert, Case No. 7.333.]

[Nowhere reported; opinion not now accessible.]

---

## Case No. 118.

### The A. J. VIEW.

[Blatchf. Pr. Cas. 143.][1]

District Court, S. D. New York. April, 1862.

PRIZE—VIOLATION OF BLOCKADE—ENEMY PROPERTY.

Cargo and appraised valuation of vessel condemned as enemy property, and for a violation of the blockade.

In admiralty.

BETTS, District Judge. The above vessel, owned by a citizen of New Orleans, and registered there, by authority of the Confederate States, on the 20th of November, 1861, was captured by the United States public ship New London on the 28th of November, 1861, in Mississippi sound, laden with a cargo of turpentine and tar. The cargo was the property of Black, the supercargo. Neither the manifest nor any other papers on board the vessel designate the voyage contemplated to be made; but it appears, from the testimony of the master and the mate, on their examination, and by the written parole given by the supercargo on the arrest of the vessel, that the cargo and vessel were destined for Balize, in Honduras. The evidence in the case is unequivocal that the voyage was undertaken by the mutual concurrence of the owner of the vessel and the owner of the cargo, to evade the blockade at the port of New Orleans, and that they were both of them, at the time, residents of that place, and well aware of the existence of the blockade. The supercargo was an Englishman by birth, but had been. for many years prior to the seizure of the cargo, residing with his family at New Orleans, and doing business there. The owner of the vessel, though a native of the state of New York, had been for many years settled in business in New Orleans. and a resident there with family. He purchased the vessel, and had her registered to him in his own name, and on his oath that he was a citizen of the Confederate States, on the 20th of November, 1861. Jecker v. Montgomery, 13 How. [54 U. S.] 498; Id., 18 How. [59 U. S.] 110; Fay v. Montgomery, [Case No. 4,709.]

After the capture, the flag officer of the United States squadron ordered an appraisement of the vessel, and appropriated her to the use of the United States government, and

[1][Reported by Samuel Blatchford, Esq.]

transmitted her cargo and officers, on the United States vessel supply, to the port of New York, to the cognizance of the United States prize court. The prize was thus brought fully under the cognizance of this court. Proceeds of Prizes of War, [Case No. 11,440.]

Upon the proofs in the suit produced by the attorney for the United States, no one appearing to contest the same, it is ordered that a decree be entered condemning the appraised valuation of the vessel and the cargo seized on board of her, with costs, and directing a distribution of the proceeds thereof, according to law.

---

### AKEN, (WARBURTON v.)

[See Warburton v. Aken, Case No. 17,143.]

---

## Case No. 119.

### AKERLY v. VILAS.

[1 Abb. U. S. 284;[1] 2 Biss. 110;[1] 1 Chi. Leg. News, 161; 8 Amer. Law Reg. (N. S.) 229.]

Circuit Court, Seventh Circuit, D. Wisconsin. Feb. Term, 1869.

REMOVAL OF CAUSES—TIME OF MAKING APPLICATION.

1. A state court has no power to entertain an appeal or other proceeding to review an order made in such court granting a petition to remove a cause from the state court to a court of the United States: nor can the state court withhold or delay the transfer of the record from its clerk's office to the United States court pending any such review.

2. An application in a state court for the removal of a cause to a United States court, made after trial and judgment in a state court of original jurisdiction, and judgment of a state court of appellate jurisdiction, which in effect reverses the judgment below and orders a new trial or hearing, is in season, where the application is made under the act of March 2, 1867, (14 Stat. 558,)—which authorizes the petition to be filed at any time "before the final hearing or trial" of the suit. The reversal and order for a new trial or hearing open the case to litigation the same as if no judgment had ever been rendered.

[3. Cited in Kellogg v. Hughes, Case No. 7,-662; McCallon v. Waterman, Id. 8,675. Questioned in Hancock v. Holbrook, 27 Fed. Rep. 402, as to the point that it is not necessary that the plaintiff or defendant, consisting of more than one party, should be collectively so situated as to authorize a removal.]

This was a motion by the plaintiff, a citizen of the state of New York, for an order allowing him to file in this court copies of the process, pleadings, depositions, testimony and other proceedings in this cause, the clerk of the state court from which removal was sought having refused to make and certify such copies. This case had been pending in the circuit court of Dane county, which on

[1][Reported by Josiah H. Bissell, Esq., and also by Benjamin Vaughan Abbott, Esq., and here compiled and reprinted with permission. The syllabus is from 1 Abb. U. S. 284, and the statement from 2 Biss. 110.]